DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 2012-017 |
| | ) | |
| LUCIEN WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

**Attorneys:**
**Alphonso A. Andrews, Esq.**
St. Croix, U.S.V.I.
**Joshua T. Burgess, Esq.**
Fort Worth, TX
    *For the United States*

**Yvette D. Ross-Edwards, Esq.**
St. Croix, U.S.V.I.
    *For the Defendant*

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court following an evidentiary hearing held on January 8, 2013 to resolve the parties' dispute regarding the quantity of drugs attributable to Defendant Lucien Williams for purposes of sentencing. Based on the evidence presented at the hearing and for the reasons discussed below, the Court finds that 239.84 kilograms of marijuana are properly attributed to Williams.

On July 11, 2012, Williams pleaded guilty to the charge of conspiracy to distribute and possess with intent to distribute less than 50 kilograms of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 21 U.S.C. § 846. Williams entered his plea pursuant to a written plea agreement, in which he acknowledged, *inter alia*, that he participated in a conspiracy with others to mail marijuana from

Texas to St. Croix, United States Virgin Islands, and to send the proceeds from the sale of the marijuana back to Texas. (Dkt. No. 149 at 2). Williams further acknowledged that on June 17, 2010, he received and signed for a parcel weighing approximately 16 pounds, and that the package had been previously intercepted, searched, and resealed for normal delivery by Postal Inspectors. The search of the parcel revealed eleven shrink-wrapped bundles that weighed a total of 12 pounds and 6 ounces, and contained a substance which field tested positive for marijuana. (*Id.* at 2-3). Williams further acknowledged that on July 21, 2010, he received and signed for two parcels weighing a total of approximately 18 pounds, and that prior to the delivery, a narcotics detection canine handled by a United States Customs and Border Protection officer positively alerted to the presence of narcotics in the parcels. (*Id.* at 3-4). Apart from identifying these three parcels, the plea agreement does not set forth an explicit agreement between the parties as to the quantity of marijuana properly attributed to Williams. The agreement does state, however, that "[t]he government believes that the defendant conspired to distribute at least 307 kilograms of marijuana." (*Id.* at 5).

Following the entry of his guilty plea, a presentence investigation was conducted by the United States Probation Office ("USPO"). The USPO issued a Presentence Investigation Report ("PSR") concluding that Williams received dozens of parcels containing marijuana in addition to the three identified in the plea agreement, and finding that 276.69 kilograms of marijuana are attributable to Williams as "relevant conduct" under United States Sentencing Guideline § 1B1.3(a)(2).[1] Williams objected to this finding, contending that there is insufficient evidence to support it. The United States disagreed with Williams' contention and asserted that the PSR drug

---

[1] Guideline § 1B1.3(a)(2) provides that a defendant's acts may be considered "relevant conduct" for the purpose of calculating a sentencing range if such acts "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G § 1B1.3(a)(2).

2

quantity finding is accurate. The Court scheduled an evidentiary hearing for January 8, 2013 to resolve this factual dispute.

At the hearing, Williams argued that: (1) the United States has failed to establish that marijuana was contained in each of the parcels identified in the PSR; and (2) the USPO's drug quantity calculation improperly includes the weight of the packaging of the parcels, and not just the weight of the marijuana itself. The United States agreed that the drug quantity calculation included the weight of the packaging and not just the marijuana, but contended that, even if the weight of the packaging were excluded, the drug quantity would not fall below the 100 kilogram threshold necessary to achieve a lower offense level score and reduced sentencing range under the Sentencing Guidelines. In support of the PSR's drug quantity finding, the United States presented—and the Court admitted—the following exhibits into evidence: (1) the parties' plea agreement; (2) an affidavit of United States Postal Inspector T. L. Halsell detailing his investigation into the instant drug conspiracy; (3) a second affidavit of Inspector Halsell identifying the reports he has compiled during his investigation and attesting to their authenticity; (4) a report (spreadsheet) prepared by Inspector Halsell summarizing the express mail receipt information for parcels shipped to Williams; (5) a memorandum summarizing Inspector Halsell's interview with Williams. (Government Exhibits 1-5).[2]

---

[2] Williams also argued at the hearing that the United States has not established when he joined the conspiracy and how long he participated in it. The parties' plea agreement is contradictory in this regard in that it indicates that Williams participated in the conspiracy "[f]rom on or about 2008 to on or about November 4, 2009," and then goes on to list marijuana shipments Williams received in 2010 as part of the conspiracy. At the evidentiary hearing, the United States represented that the 2008 through November 4, 2009 timeframe listed in the plea agreement was a typographical error, and the conduct properly attributable to Williams is his receipt of parcels from November 7, 2009 through December 13, 2010, as detailed in Inspector Halsell's report summarizing the Express Mail receipts for those shipments. (Dkt. No. 175-1). The Court's drug quantity finding is based on the shipments sent to Williams during this 13-month period and outlined in Inspector Halsell's report.

After the hearing, the United States filed a Motion to Admit Supplemental Exhibits (Dkt. No. 175) seeking to admit: (1) a revised version of the spreadsheet summarizing the parcels sent to Williams, which individually numbered the 47 parcels for ease of reference; (2) copies of the Express Mail labels for each parcel; and (3) signed proofs of receipt for 33 of the parcels. (Dkt. Nos. 175-1–175-5). Williams filed a Notice (Dkt. No. 176) indicating that he did not object to the United States' Motion. By Order dated January 18, 2013 (Dkt. No. 177), the Court granted the Motion and admitted the supplemental exhibits.

The uncontroverted record evidence establishes the following. In December 2009, the Fort Worth Division of the United States Postal Inspection Service, along with United States Customs and Border Protection officers and agents from the Drug Enforcement Agency Dallas/Fort Worth Airport Task Force, began conducting an investigation of a drug trafficking organization ("DTO") engaged in the shipment of marijuana via United States mail. (Gov't. Ex. 2 at 1). The investigation determined that members of the DTO shipped 120 Express Mail parcels from Arlington, Texas to St. Croix, United States Virgin Islands using fictitious return addresses and actual destination addresses, a practice employed by drug traffickers to conceal their identities. (*Id.* at 1-3). Of these shipments, multiple parcels were intercepted during the course of the investigation, searched, and found to contain marijuana, before being resealed and delivered as normal. (*Id.*). According to investigators, drug traffickers are likely to use the same covert mailing conduit once a successful shipment has been made. (*Id.* at 3).

The investigation also identified 110 Express Mail parcels sent by members of the DTO from St. Croix to addresses associated with the DTO in North Texas. During the course of the investigation, 78 of these parcels were inspected, all of which contained suspected drug

proceeds. In total, the parcels contained $351,055 in postal money orders, a cashier's check in the amount of $5,000, and $2,000 in cash secreted inside the pages of a magazine. (*Id.* at 4).

With respect to Williams' involvement in the DTO, the investigation identified 47 parcels—documented by their Express Mail receipts—sent from the fictitious addresses in Texas to Williams or his wife, Michelle Gaskin Encarnacion. (Dkt. No. 175-1).[3] During an interview with Inspector Halsell, Williams indicated that his wife was not involved in the DTO, had no knowledge of the contents of the parcels addressed to her, and picked up parcels at his request. (Gov't. Ex. 5). During the same interview, Williams also stated that he: (1) knew the parcels contained marijuana; (2) opened several of the parcels; and (3) was paid $500 by a coconspirator for each parcel received. (*Id.*).

In addition to Williams' admissions regarding the contents of the parcels, investigators intercepted four parcels addressed to Williams or his wife prior to delivery. Three of these parcels—one sent on December 5, 2009 and two sent on July 19, 2010—were presented to narcotic detection canines who positively alerted to the presence of narcotics within the parcels. (Gov't. Ex. 2 at 2-3, 7-8). A parcel sent on June 14, 2010 was intercepted and searched by Postal Inspectors on June 15, 2010 before being resealed, delivered to, and signed as received by Williams two days later. In this parcel weighing 15 pounds and 8 ounces, Postal Inspectors located eleven shrink-wrapped bundles weighing a total of 12 pounds and 6 ounces. A field test

---

[3] Of the 47 parcels addressed to Williams or his wife, 44 were sent to the address RR 14C Est. St. John Box 4704, Christiansted, St. Croix, VI 00820; two parcels were mailed to P.O. Box 1394 in Christiansted; and one parcel was sent to #6 Constitution Hill in Christiansted. The United States also submitted delivery confirmation receipts along with 33 of the Express Mail receipts. Williams' signature appears on 31 of these delivery confirmation receipts, and his wife's signature appears on the other two. (Dkt. Nos. 175-2 – 175-5).

was conducted on the bundles, and the substance contained therein was positively identified as marijuana. (*Id.* at 7).[4]

Based on the foregoing, the Court concludes that the 47 parcels identified by Postal Inspectors and shipped to Williams or his wife from November 7, 2009 through December 13, 2010 contained marijuana. (Dkt. No. 175-1). The Court further finds that the weight of the marijuana in these parcels is properly attributed to Williams for sentencing purposes as relevant conduct under Sentencing Guideline § 1B1.3(a)(2).

The 47 parcels at issue weighed 669.33 pounds in total, as evidenced by the Express Mail receipts documenting the weight of each parcel. (Dkt. Nos. 175-2 – 175-5).[5] This does not end the inquiry, however, because the Court must determine the weight of the *marijuana* contained within the parcels, which is equal to the total weight of the parcels less any packaging or other material contained in the parcel. Because Postal Inspectors did not intercept every parcel shipped to Williams and weigh its contents prior to delivery, the Court cannot determine the exact weight of the marijuana within the 47 parcels shipped. To approximate this figure based on the available evidence, the Court will assume that the ratio of packaging to marijuana in all 47 parcels is the same as the June 14, 2010 parcel that was intercepted and had its contents weighed by Postal Inspectors. Of that parcel's total weight of 15 pounds and 8 ounces, the marijuana contained within weighed 12 pounds and 6 ounces. Thus, 79 percent of the parcel's total weight was

---

[4] In the plea agreement, Williams also acknowledged the positive drug testing and his receipt of the parcels sent on June 14, 2010 and July 19, 2010. The plea agreement makes no mention of the December 5, 2009 parcel. (Dkt. No. 149 at 2-4).

[5] The parcel weights are listed in both pounds and ounces, and total 648 pounds and 341.4 ounces. 341.4 ounces is equal to 21.33 pounds (341.4 / 16 = 21.3375). Thus, the total weight of the parcels in pounds is 669.33 (648 + 21.3375 = 669.3375). The Court will round each figure *down* to the nearest hundredth for ease of calculation. In order to avoid improperly attributing additional quantities of marijuana to Williams, no matter how small such quantities may be, the Court will not round any figure *up*.

6

marijuana.[6] Applying this same percentage to the total weight of all 47 parcels results in a finding of 528.77 pounds of marijuana.[7] Converting this total to kilograms, the Court concludes that the parcels contained 239.84 kilograms of marijuana.[8]

Accordingly, the Court finds that 239.84 kilograms of marijuana are properly attributed to Williams for purposes of sentencing.[9]

**SO ORDERED**.

Date: May 22, 2013

_____/s/_____
WILMA A. LEWIS
District Judge

---

[6] 12 pounds and 6 ounces is 198 ounces ((12 x 16) + 6 = 198), and 15 pounds and 8 ounces is 248 ounces ((15 x 16) + 8 = 248). 198 divided by 248 equals 0.79 (198 / 248 = .7983871).

[7] 669.33 pounds multiplied by 0.79 equals 528.77 pounds (669.33 x 0.79 = 528.7707).

[8] One kilogram is equal to 2.20462 pounds. Expressed differently, one pound equals 0.453592 kilograms. Thus, 528.77 pounds is 239.84 kilograms (528.77 x 0.453592 = 239.84584184).

[9] The Court notes that under the Sentencing Guidelines, 239.84 kilograms of marijuana results in a base offense level of 26 because it falls within the 100 to 400 kilogram range identified in USSG § 2D1.1. Thus, while the Court's finding differs from the USPO's initial conclusion of 276.69 kilograms, Williams' base offense level of 26 as identified in the PSR does not change.